## JOHN JENNISON *et al. versus* HUTCHINS HAPGOOD.

Where a person, being at a distance from home, sent for his wife and other relatives, and they went to see him, but did not arrive until after his death, and his executor paid the expenses of their journey, the executor was allowed to charge the same in his account of his administration.

A domicil being once fixed, will continue, notwithstanding the absence of the party, until a new domicil is acquired.

The intention to abandon a domicil, and actual residence at another place, if not accompanied with the intention of remaining there permanently, or at least for an indefinite time, will not produce a change of domicil.

If a person domiciled here removes to another State for the purpose of avoiding the effects of pecuniary embarrassments, and to entitle himself to sue in the courts of the United States, but intending to return to his family after having accomplished his object, he cannot be considered as having renounced his domicil.

A testator having his domicil in the town of P. in this State, and being the owner of a farm there upon which he and his family resided, became embarrassed in his pecuniary concerns and went out of the Commonwealth and never returned. He left behind him a wife and daughter, who continued to reside on the farm with his son, who hired the farm of him and charged to him their board. After leaving this Commonwealth, he led a wandering life, but spent the most of his time at L. in Vermont, his object being to take care of his lands there ; he never kept house there, but lived at board with a person with whom he had resided occasionally for several years. In his journal, in which he kept a memoradum of his expenses and of his journeys from place to place, he never speaks of any place as his home. In his letters, he speaks of sustaining actions here in the federal court, " as he has removed his habitancy from Massachusetts," — " as he has become an inhabitant of Vermont," — and in speaking of an action brought against him here, he expresses his opinion that the service is insufficient, " as P. is not his last and

**78**

**78**

Jennison
*v.*
Hapgood.

usual place of abode." In deeds, and in his will executed in New Hampshire, he styles himself of P. His will was proved here originally, and in the probate he is styled " late of P. "; as he is also in the subsequent proceedings in the probate courts here and in Vermont ; and he is so styled in deeds made by the executor. He died in New Hampshire, being there upon business. It was *held,* that these facts did not prove a change of domicil.

If an executor here, having taken out ancillary administration in another State, has in his hands, after paying the expense of administration and discharging his liabilities there, a surplus arising from the proceeds of sales of lands in such State, he is to account for it here as personal property.

An administrator who sells under a license of court, more land than is necessary for the payment of debts and legacies, is estopped to deny the validity of the sale, in settling his administration account.

If an executor here takes out ancillary administration in another State, a judgment of a court in such State upon liabilities there incurred by him, if it has the power and means to enforce the judgment, is conclusive upon our courts.

As an executor here, who has taken out ancillary administration in another State, may be compelled to render there an account of his ancillary administration, he may account there voluntarily, and in opposition to the wishes of the parties interested in the estate.

The expenses of an ancillary administration are regularly to be settled by the courts of the State under whose authority they were incurred.

Where an executor in this State, being ancillary administrator in another State, settled in the probate court here an account of his administration in both States, and upon the application of the heirs the settlement was annulled on the ground of fraud, and the executor directed to account anew, it was *held,* that he was not estopped to settle, before the courts of the other State, his account of the ancillary administration.

If an executor, not having assets, advances his own money in order to redeem land of the testator, mortgaged for less than its value, and to prevent a foreclosure, he is entitled to interest on the money advanced.

An executor having a private demand against the testator, upon which the testator told him to charge reasonable interest, will not be allowed compound interest upon it, in the settlement of his administration account.

Where an executor sold land of the testator, and became himself, with two other persons, the purchaser, under an agreement to share equally in the profits of a resale, he was held to account for a third part of such profits, in settling his administration account.

Whether he might not, in strictness, be charged with the whole of the profits, *quære.*

If an executor receives money for land sold by him, and the testator's title proves to have been defective, he must nevertheless be charged with the money in his administration account, unless he shows that he is under a legal obligation to refund it.

After submitting such charge to the examination of an auditor appointed by the court of probate here to audit his administration account, and after a decision by the auditor, it is too late for the executor to object that the money was received for land in another State, and was therefore not within the jurisdiction of the court of this State.

Whatever money is received by an executor, in that capacity, whether rightfully or otherwise, he must account for as executor, unless he shows a liability to pay it over to some person having a right to it, and that payment has been demanded, or at least that it probably will be demanded.

Jennison
v.
Hapgood.

An executor who refuses to render an account of the use which he has made of the money in his hands, but claims it as his own, who has been in the habit of receiving compound interest, and who repels in an unsatisfactory manner the imputation of fraud or gross negligence, is chargeable with compound interest, with annual rests, from the time when he ought to have settled his administration account.

Where, however, wild lands of the testator were sold by the executor and bought in by himself, and the heirs elected to consider him as the purchaser, but no profit had accrued to him from the lands, frequent taxes had been paid by him, the lands were unsalable, and the title to some of the parcels doubtful, he was charged with only simple interest.

Where an executor here, takes out ancillary administration in another State, the question as to charging him with interest is exclusively cognizable by the courts of this State, where the final settlement of the estate is to be made.

If an estate is not settled by an executor so soon as it ought to be, and lands are sold by him unnecessarily, yet if the parties interested in the estate claim the benefit of his acts, all necessary charges and expenses incurred by him in the management of the property are to be allowed.

Taxes paid in good faith by an executor, upon lands supposed to belong to the testator and purchased by the executor, but the testator's title to which proved defective, were allowed to the executor, upon his conveying all his interest in the lands to the parties interested in the estate, with warranty against incumbrances created by himself.

Taxes paid by an executor, on land in another State where he had not taken out letters of administration, were not allowed in the settlement of his account.

Where many lots of wild land were sold by an executor, by auction, and to prevent a sacrifice he employed persons to bid upon them generally, without singling out particular lots as being more valuable than others, and most of the lots were bid in for him, it was *held*, that the heirs must elect to consider him as a purchaser or a trustee of the whole, and that they could not affirm the sale as to part of the land and disaffirm it as to the residue.

Unfaithful administration will not deprive an executor of a right to compensation for his services, so far as they have been beneficial to the persons interested in the testator's estate.

JONATHAN GROUT died in 1807, having made a will, in which Hutchins Hapgood, the appellee, was named the executor. Hapgood took out letters testamentary in December 1807, in the county of Worcester, and settled in the probate court of the same county three accounts of administration ; the first, in August 1813, the second, in May 1815, and the third, in December 1819.

At a court of probate held in May 1823, John Jennison, John Sanderson and Israel Houghton, the appellants, presented a petition, in which they represent, that the executor has come into the possession of goods, effects and credits belonging to the estate of the testator, for which he has never accounted, and that the accounts which have been rendered by him con-

tain many gross and important errors, which have been dis-
covered since the settlement of the accounts, and that the
petitioners have good reason to believe that many frauds and
deceitful artifices have been practised by the executor in stat-
ing and settling his accounts ; and they pray that he may be
cited to render a true, perfect and final account of his adminis-
tration, so that the errors may be corrected.

A citation was issued accordingly, and at a probate court
held on January 20th, 1824, the petitioners offered to prove,
in order to avoid the effect of the previous settlements and de-
crees, that the errors were intentionally and fraudulently intro-
duced by the executor into his accounts, for the purpose of
depriving the petitioners of their just rights, and that the de-
crees allowing the same were fraudulently procured and obtained
by means of the deceitful artifices and false oaths of the exec-
utor.

At the same court the executor rendered an account, in
which several errors in his former accounts were corrected,
and the judge of probate decreed that he should be charged
with a balance of $ 3433·45, and that he should pay over this
sum to the legatees or devisees, in proportion, according to the
will of the testator.

From this decree the petitioners appealed, and filed numer-
ous reasons of appeal.

At April term 1824, of this Court, as Supreme Court of
Probate, the appellee, for answer to the complaint of the ap-
pellants, pleaded that the accounts rendered by him as executor
were not fraudulent, and that the several decrees of the judge
of probate allowing the accounts were not obtained by the false
affirmations and oaths of the appellee, but, on the contrary,
that the accounts were severally made and rendered by the ap-
pellee honestly and in good faith, he, at the time, believing them
respectively to be just and true.    Issue was joined on this plea,
and upon a trial the jury found that the accounts were fraudu-
lent, and that the several decrees allowing them were obtained
by the false affirmations and oaths of the executor, and not hon-
estly and in good faith.

After this verdict, Samuel Howe (a judge of the Common
Pleas) was appointed an auditor to examine all the accounts,

and the evidence and vouchers in support thereof, of the appellee, in relation to his administration, and to make a fair and correct statement of the several claims of the appellee against the estate, and of the credits with which he ought to charge himself, and how far the accounts were correct and ought to be allowed.

At the hearing before the auditor, interrogatories on the part of the appellants were put to the appellee, some of which he declined to answer, because they had no application to any matters relating to his administration upon the estate within this Commonwealth, but related exclusively to his administration upon the estate of the testator within the State of Vermont, where the appellee had been legally appointed administrator and had given a bond to account for the property of the testator within that State, and had obtained a citation to all persons interested, which had been duly served, to appear at a probate court to be held in Vermont in March 1825, to show cause why the account of the appellee, as executor, should not be allowed. The appellants alleged that the appellee ought not to refuse to answer all the interrogatories, because he had heretofore rendered to the court of probate within this county divers accounts of his administration, embracing matters transacted by him as executor, as well within the State of Vermont as elsewhere, without any exception having been taken by the appellants as to the right or authority of such court to take cognizance of all the subjects contained in those accounts, or any objection being made against a full and final settlement thereof within this Commonwealth ; and that such court has proceeded, with the consent of all persons interested, to pass decrees upon all the subjects of the accounts thus voluntarily rendered ; and that the appellee, although more than seventeen years had elapsed since he accepted the trust of executor, had never rendered any account of his administration to any court in Vermont, nor had he been required to do so. The appellee, after the auditor had decided that he should answer the interrogatories respecting the estate in Vermont, submitted to answer them and to settle his accounts, reserving to himself the right to present the same question to this Court, and protesting against the right of the auditor, or of this Court, to compel him

82

to settle here any account of his administration in the State of Vermont.

At October ·term 1825 of this Court, the auditor made a report.

It appeared by this report, that the appellee originally proved the will and obtained letters testamentary in Massachusetts, and that a copy of the will and of the probate was filed by him in Vermont, where he took out letters of administration.   All the testator's debts were proved before commissioners of insolvency appointed here, and the same have been paid by the appellee.   All the parties to the present suit live in Massachusetts, and no person interested in the estate lives in Vermont.

In regard to the property situated without the Commonwealth, which consisted chiefly in land, part of which was sold · by the appellee as administrator, under a license of a court of probate in Vermont, for the payment of debts, the auditor reported, that the administration here had been treated by all the parties as the principal administration, the appellee having three times settled his accounts in the probate óffice here, and having in each instance included an account of his proceedings in Vermont as well as here, and especially, in his accounts furnished to the auditor at the first meeting to hear the parties, having included all the items of debt and credit relating to the estate in Vermont as well as here, and having claimed divers large sums of money, as well for debts due there, as for personal services rendered in the settlement of the estate there ; and inasmuch as the interrogatories objected to related entirely to items contained in the accounts thus furnished to the auditor by the appellee, the auditor decided that the objection urged by the appellee furnished no excuse for not answering the interrogatories proposed by the appellants.   If the Court should be of opinion that they have no jurisdiction over the proceedings of the appellee in relation to the estate in Vermont, but that his account respecting the same is to be settled in the courts of that State and not elsewhere, then all the items in the accounts filed in this case and considered by the auditor, in relation to estate so situated, were to be rejected.

*Hoar* and *Newton*, for the appellee, contended in a written argument, that even if it were granted that the domicil of the

testator at the time of his decease, was in Massachusetts, the
original settlement of the appellee's account in relation to the
estate in Vermont, as well personal as real, and the decision of
the question for how much, and for what property found there,
the appelle must account, must be determined by the courts of
that State.  *Dixon's Executors v. Ramsay's Executors,* 3
Cranch, 319 ; *Goodwin v. Jones,* 3 Mass. R. 514, 518 ;
*Stevens v. Gaylord,* 11 Mass. R. 256 ; *Selectmen of Boston
v. Boylston,* 2 Mass. R. 384 ; *Dawes v. Boylston,* 9 Mass.
R. 337. But if it were necessary, they said it might be shown
that the testator's domicil was in Vermont.

The fact that the appellee submitted heretofore to render
here an account of property situated in Vermont, does not
bind him now to render an account of the same property in
this Court.  The decree of this Court requiring him to ac
count anew, places the parties where they stood before any
account was rendered.  *Lowe v. Rice,* 8 Johns. R. 319 ;
*Clayton v. Perdun,* 13 Johns. R. 218 ; *Bromaghin v. Thorp,*
15 Johns. R. 476 ; *Martin v. Commonwealth,* 1 Mass. R.
359 ; *Lawrence v. Smith,* 5 Mass. R. 362.

If this Court now proceed to settle the appellee's account
of his doings in this State, they will proceed as if the testator
had died seised and possessed of no estate excepting that which
he left in this Commonwealth.  It may be otherwise when the
Court decree a final distribution among the legatees.  The
Court cannot proceed on any other ground until the probate
account shall be settled in Vermont.°  If it is improper, in the
opinion of the Court, to settle the Vermont account here orig-
inally, they will settle no claim which presupposes the account
there settled.  Not only the questions, — whether the testator.
in fact, owned the lands sold in Vermont, — or owned any land
or other estate there, — whether the appellee is or is not liable
to refund any or all of the purchase money to the purchasers,
— what services rendered by the appellee in relation to this
land, were properly bestowed, and what services were useless ;
— but all questions relating to property in Massachusetts which
depend on the question whether the appellee had or had not
assets at any particular time, must be suspended until the Ver-
mont account is settled, or it must be assumed that he had no

assets there.   If the whole Massachusetts account is settled by itself, it will appear by the auditor's report, that the estate was insolvent.

*Bigelow*, for the appellants.   The courts of Massachusetts have authority to hold the appellee to account for all matters transacted by him and assets received by him, as well those in Vermont as those here.   The case shows that the testator's domicil was in Massachusetts.   The final settlement and distribution of the estate must therefore be made according to our laws.  *Harvey* v. *Richards*, 1 Mason, 408 ; *Richards* v. *Dutch*, 8 Mass. R. 506 ; *Dawes* v. *Boylston*, 9 Mass. R. 337 ; *Stevens* v. *Gaylord*, 11 Mass. R. 256.

Until it is shown that there are legal questions to be settled in relation to the estate in Vermont, which our own courts are not so competent to settle as the courts of that State, it is unreasonable to send the parties to a distant foreign tribunal, in order to ascertain their rights.   The whole estate which has come into the possession of the appellee, is held by him under a trust created in reference to our laws and to be executed according to them.   But if the subject is divided, and different portions of it adjusted by different and independent tribunals, there is danger that different and contradictory rules will be applied.   All the parties are here and are citizens of this Commonwealth ; the subject to be litigated is of a transitory nature, involving no principle of local law or policy pertaining to another State ; the whole question respects the execution of a trust created here ; and the whole trust fund is also here, and the proceedings are entirely *in personam*.   Under these circumstances the Court will not send the appellants out of the State, to prosecute their rights before a court which can decide the cause correctly, only by taking for their guide those laws which would govern our own courts, and which our own courts must be the best qualified to expound.   The more reasonable view of the case is, to regard the administration in Vermont as subsidiary merely to the administration here ; and as the executor here is administrator there, to consider his whole authority there as nothing more than a necessary means of collecting the testator's effects there for the purpose of being finally administered and accounted for here.   It is true that the

appellee may be required to render an account in Vermont; but that is for the benefit of the *cestuis que trust*, who may waive their right in this respect, if they please. Our own courts have original jurisdiction of all the acts of the executor, wherever performed ; and whether they will wait for or be governed by the adjudications of a foreign court upon the subjects of the trust, is a matter of discretion. There can be no necessity for the interference of the foreign court, where the same person is administrator in both States ; it is only where different persons administer in different States, that the aid of a foreign court may be useful, in order to effect a removal of the trust fund to the place of the principal administration, where it is to be distributed. If in the present case the courts of Vermont should undertake to settle the estate there, the appellants would not be concluded by their judgment or decrees, when produced in our courts by the appellee. If it.were otherwise, it would be in the power of the courts of Vermont to protect a trustee residing within this State, from the operation of our laws, in regard to a trust created here.

It may be urged on the other side, that the courts of Vermont have a peculiar and exclusive jurisdiction of his administration in that State, because his authority to administer the effects situated there was derived from the laws of that State. But the authorities show, that the jurisdiction of the courts where the deceased had his domicil and administration was originally granted, is exclusive, in whatever regards the final settlement of the estate, the ascertaining of the residue after the payment of the debts, and the distribution thereof ; and that legatees must resort to the country of the testator, to obtain the bounty which they claim. *Dawes v. Boylston*, 9 Mass. R. 355, 358 ; *Richards v. Dutch*, 8 Mass. R. 506.

It may be contended by the appellee, that the courts in Vermont may at least settle the amount of compensation to which he is entitled for his services in collecting the testator's effects in that State. But this they cannot do understandingly, without having a view of the whole administration ; which is necessary to enable them to judge what services were required to be rendered by the executor, and what would be a reasonable compensation therefor. This seems to be more properly a

Jennison
v.
Hapgood.

subject for the consideration of the court which has exclusive jurisdiction in whatever regards the final settlemen* of the estate.

The appellee may further object, that the courts in Vermont have exclusive jurisdiction, because the principal portion of the assets received by him there arose from the sale of lands situated there. Courts of common law, as well as courts of chancery, may entertain jurisdiction of matters arising without their jurisdiction, if the defendant is within it, where the proceedings are *in personam*, and not *in rem*, unless the cause of action involves a breach of the peace. *Mostyn* v. *Fabrigas*, Cowp. 161 ; *Glen* v. *Hodges*, 9 Johns. R. 67. Courts of chancery frequently exercise jurisdiction in cases of fraud, of trust, and of contract, which relate to lands without their jurisdiction, so far as to cancel a title obtained by fraud, to enforce the trust, or to compel a specific performance of the contract, if the person is within their jurisdiction. *Arglasse* v. *Muschamp*, 1 Vern. 75 ; *Kildare* v. *Eustace*, ibid. 419 ; *Penn* v. *Lord Baltimore*, 1 Ves. sen. 444 ; *Cranstown* v. *Johnston*, 3 Ves. jun. 170, and 5 Ves. jun. 277 ; *Guerrant* v. *Fowler*, 1 Hen. & Munf. 5 ; *Massie* v. *Watts*, 6 Cranch, 148. These decisions are sufficient to show, that the questions which are raised by the appellee, respecting the lands in Vermont, are not so much of a local nature as to arrest the jurisdiction of our courts in relation to his proceedings in Vermont.

Admitting that the courts in the two States have concurrent jurisdiction, the court before which proceedings are first had, cannot be ousted of its jurisdiction by proceedings in another court in relation to the same subject. *Stearns* v. *Stearns*, 16 Mass. R. 167. The present suit had been pending several years before the appellee instituted his proceedings before the courts in Vermont.

But it is now too late for the appellee to avail himself of any objection which might have been made as to the want of jurisdiction. He has voluntarily and repeatedly submitted all his proceedings to the jurisdiction of our own courts, and he ought not to be permitted, at this late period, to withdraw. He has rendered four accounts to the probate court here, each of which embraced subjects arising in Vermont, and which

were pretended by him to contain a full statement of his whole administration there.   He has also, in the course of the recent proceedings, presented the same subjects to the court of probate here, in a general account, in consequence of the determination of the court that his former accounts should be restated and corrected ; and no objection was made by him to the jurisdiction of the court, as to the matters arising in Vermont, until the cause had proceeded to a hearing before the auditor.   A defendant is precluded from objecting against the jurisdiction of the court, after he has answered to the suit. 1 Chit. Pl. 427, 435 ; *Mostyn* v. *Fabrigas*, Cowp. 161 ; *Smith* v. *Elder*, 3 Johns. R. 105.   There are some cases where the want of jurisdiction may be taken advantage of in any stage of the proceedings ; but it is only where there is a total want of jurisdiction of the subject matter, or where the action is founded on matters of a local nature, which arose in a foreign state or country.   But such is not the present case.

Further, as to all the subjects contained in the accounts heretofore rendered by the appellee to the court of probate here, decrees have passed, without any objection being taken to the jurisdiction ; and the appellee has pleaded successfully those very decrees, (alleging that no appeal from them was ever claimed,) in bar to a bill in equity against him for the enforcement of a trust.   If then those decrees could not have been avoided on account of the want of jurisdiction originally in the court which passed them, the objection cannot be now made by the appellee, so as to prevent a rehearing of the same matters, and a correction of the decrees, if erroneous. The court cannot but have the same control over its decrees, in a case where its jurisdiction was derived from the voluntary submission of the parties, as where jurisdiction belonged to it originally as a matter of right.   There must be the same opportunity, in both cases, to correct error and fraud.   The former decrees were not set aside because they had been rendered by an incompetent tribunal, but because the basis of them was false and fraudulent.   Nor did the court, by annulling those decrees, intend to send the parties out of court ; but having begun to settle the appellee's accounts, the court mere-

ly required that they should be settled according to truth and justice.

At April term 1826, the *Court*, having examined the report of the auditor, said, — We have postponed for consideration, all parts of the report which relate to transactions respecting the property in Vermont and the debts and credits arising therefrom, because it is agreed that a settlement is in progress in the probate court of that State, where the appellee took out letters of administration for the purpose of settling that part of the estate which was found there. Whether any decree which may be obtained there, will be conclusive or not, in the final settlement of the account here, we think it not proper to determine, until such decree shall be presented to us for consideration, because the nature and extent of it, and the subjects it may affect, will be important subjects of discussion. We reserve ourselves entirely free from opinion now, upon the legal effect of any such supposed decree, and have wholly omitted to pass upon any of the subjects contained in the report, which may eventually be involved in it.

It seeming to be agreed by both parties, that it was necessary to recommit the report to the auditor for correction, and the Court being of that opinion, it was recommitted, with remarks of the Court upon some parts of it.

An item, numbered 5, which was disallowed by the auditor, was a charge of $11·69, for the expenses of the widow and heirs in going to Dover to see the testator at his request, during his last illness. The testator died however before their arrival. *Per Curiam.* We think this item may be allowed.

No. 107, for $2·88, was allowed by the auditor. The appellee's counsel stated that this item was for money paid for newspapers to perpetuate the evidence of notice on the sale of real estate, and for a Vermont Register, and for advertising ; that it was for the interest of the estate that this expense should be incurred ; and that the Register was necessary, as furnishing information in regard to the public officers, particularly in reference to taking depositions. *Per Curiam.* This charge is allowed.

At October term 1826, the auditor made a second report.

Having been directed by the Court to report the facts which would have a legal influence upon the question of the testator's domicil, the auditor stated, that previously to July 1803, the testator lived in Petersham in the county of Worcester, where he had a valuable farm, upon which he and his family resided.   He was a member of the first congress after the adoption of the constitution of the United States, and of the senate of this Commonwealth.   He became much embarrassed in his pecuniary concerns, and wished particularly to avoid the claim of Mrs. Hale against him, and in July 1803 he left the Commonwealth and never returned.   He left a wife and daughter behind him, who continued to reside upon the homestead with his son John, who charged their board to the testator, having hired the farm of him.   From the time of the testator's leaving Petersham until his death, he led a wandering life, but spent more of his time at Lunenburg in Vermont, than anywhere else, and his residence became more constant there in the latter part of his life.   He never kept house there, but boarded principally with Samuel Gates, who says he resided there occasionally for several years.   His object in residing there seems to have been, to take care of his lands lying in that place.   No evidence was produced as to his intention of remaining there, except what results from his letters.   In his journal, in which he kept a memorandum of his expenses and of his journeys from place to place, he never speaks of any place as his home ; nor of any intention to return to Petersham or establish himself in any other place.   Some of the members of his family visited him while he resided in Lunenburg.   In a letter of February 1804, he speaks of bringing an action against the sheriff for some alleged misconduct in relation to the de mand of Mrs. Hale, and adds, — " and as I have removed my inhabitancy from Massachusetts, I shall stand fair to support it in the federal court ; " and speaks of removing another action on the same account.   In a letter of November 1803, he says, " If any new action should be brought against me by any of them, I wish to know it ; and shall take measures to move in court, that as I have moved out of the State and become an inhabitant of Vermont, I have a right to remove the action into the Circuit Court at Boston."   In March 1805, in a letter to

Jennison
v.
Hapgood

90

the appellee, he says, " He (his son John) wants to know what I will do with the farm.. ` In answer, I say, I can do nothing with it. He or you must take care of it, and do the best you can with it, and pay yourselves and let me have as much rent as you can." In February 1807, he says, " Do what you please with the farm among you ; I can do nothing about it." In a letter to the appellee, of June 1807, he says, " I want one of my grandsons to come and live with me, could it be agreeable. I think I should be able to do well by them, but the probability is that they could do me but little good very long." On July 8th, 1807, he says, " I think the sheriff has not done his duty, for the law contemplates personal notice ; but Petersham is not my last and usual place of abode, which he must very well know." In a deed made by the testator to John Grout, of December 25th, 1804, — in another to the appellee,. of January 28th, 1806, — in a power of attorney made by him in March 1806, — and in his will, executed at Keene in New Hampshire and dated December 29th, 1804, — he styles himself of Petersham. He died at Dover in New Hampshire, where he went to attend to some business. His will was presented for probate in the county of Worcester, and in the decree of the judge of probate he is called " late of Petersham." A copy of the will and of the probate was carried into Vermont, and filed in the probate court there. In the probate of the will there, and in all the subsequent proceedings in the probate courts there and in the county of Worcester, the testator is called " late of Petersham." In a deed from the appellee in December 1808, and in one of March 1815, and in a large number of receipts produced by the appellee and taken from 1808 to 1815, and in all the accounts rendered by him in the court of probate, the testator is called " late of Petersham," and he is never called of any other place, either by himself or others.

*Bigelow* said on this subject, that if the domicil of the testator should be determined to have been in Vermont, the effect would be to annul all the proceedings of the appellee ; that the will had never been proved in Vermont, but only a copy of it had been filed in that State ; that under the circumstances of the case, the appellee ought not to be permitted, at this late

period, to say that all his proceedings are void, when they have been acquiesced in, so far as respects the question of domicil, by all other persons interested in the testator's estate.

Jennison
v.
Hapgood.

The auditor reported that the appellee's account contained a charge, under date of April 25th, 1809, for money paid in specie, and for trouble and expense in procuring it, for the redemption of the homestead farm.    This farm, which had been mortgaged by the testator to Mrs. Hale, was specifically devised to his son, John Grout, and the estate of the testator was charged with the payment of half of the incumbrance upon it, in a certain event, before the payment of any other legacies. The equity of redemption of the farm was sold on execution to one Jennison, but the execution was issued upon a judgment founded on the same debt which was secured by the mortgage, so that the right of the devisee of the mortgager remained unaffected by this proceeding.   On March 1st, 1809, the executor paid $ 1695·75, to procure an assignment of the mortgage by Mrs. Hale to Aaron Brooks and himself, and on April 25th, 1809, he paid $ 1084·66 to Jennison, for the equity of redemption which Jennison had previously purchased.   It was for the redemption of this right in equity, that the charges in question were incurred.   In December 1809, the appellee sold the equity of redemption in this farm to Aaron Brooks for $ 1584·66 ; Brooks acting, as he says, as the agent of the appellee.   Soon afterward, Brooks conveyed the same estate to the appellee, in whose hands it now is.   The farm having been mortgaged by the testator, only an equity of redemption was devised to John Grout, and it being a specific devise, the appellee had no right to dispose of it unless there was a failure of assets ; which did not appear to have been the case.   If the sale to the appellee should be vacated, and the estate descend to the heirs of John Grout, (who had deceased,) the executor is to be credited with the two sums, $ 1695·75 and $ 1084·66. But no allowance is to be made for the trouble and expense incurred in raising the money, for the sale might as well have been made subject to the whole incumbrance as to a part, and if the money paid to Jennison was more valuable than the common currency of the country, the appellee, it appears, sold the

92

equity in December upon terms of specie, or Boston money, which was equal to specie. If the sale should be confirmed, the appellee ought to be charged with $ 500, the sum for which the equity was sold, after deducting the amount paid to Jennison.

*Hoar* and *Newton* urged that it was discreet in the appellee to redeem of Jennison, for it had not then been determined that an extent on mortgaged land for the debt secured by the mortgage was inoperative ; and that in so doing the executor acted by the advice of counsel, and so was entitled to be protected ; *Thompson* v. *Brown*, 4 Johns. Ch. R. 619 ; and that the specie was procured on the best terms possible at the time.

The appellee, having stated his private account against the testator, received a letter in which the testator, after mentioning several sums which he thinks ought to be deducted, says, " add reasonable interest and every thing else necessary, and let me know the balance, take my note for it," &c. The auditor allowed simple interest upon this item.

In the first report the auditor stated, that the executor had credited the estate with the proceeds of land of the testator in Dana and Petersham, which was sold by auction by the appellee, and was purchased by the appellee and Aaron Brooks and Israel Houghton, (who were heirs and devisees of the testator,) in pursuance of an agreement entered into between them before the sale. The object of their agreement seems to have been, to prevent a sacrifice of the land and to advance the interests of the estate, and they actually gave more for the land than any other person would, and so near the price for which it was afterwards sold, as to preclude the idea of fraud in the transaction. This land was afterward sold at an advance of between $ 300 and $ 350, exclusive of interest. This profit, according to the terms of the original agreement, was divided equally between the appellee and Brooks and Houghton. The appellee contended, that as the sale was a fair one, and the agreement was entered into with a *bonâ fide* intention to promote the interest of the estate, — as the land was taken at the risk of the purchasers and might have fallen in value, in which case the loss must have rested on them, — and as the

advance upon the auction price was small, — he ought not to be charged with any thing beyond what he had already credited to the estate. The auditor considered it to be a rule, that a trustee cannot become the purchaser of a trust estate ; that this rule has its foundation, not in the actual commission of fraud, but in the removal of temptation to commit fraud ; that although such a transaction may be conducted with the utmost fairness, yet that the scope given to human ingenuity will enable it gen= erally (where integrity is wanting) to baffle the utmost subtilty of legal investigation ; hence the fairness or unfairness of the transaction, or the comparison of the price and value, is not suffered to enter into consideration in such a case, but the rule is positive and general, " that the *cestui que trust* may be re= stored to his original rights against the trustee, at his option." The auditor was therefore of opinion, that the appellee was to be charged with some advance upon the sum credited by him. But as the purchase was made by him in company with two others of the heirs, and as but one third of the advance was to be his in any event, the auditor was disposed to consider him as the purchaser in fact of but one third of the estate sold, and of course to be charged with only one third of the advance upon the whole estate purchased by him and Brooks and Houghton. The appellants contended that the appellee ought to be charged with the whole amount of the profits of the resale.

The rule above laid down in regard to a sale by a trustee, was sanctioned by the Court.

In his second report the auditor made an allowance to the ap= pellee for taxes paid by him upon these lands, but no allowance was made for commissions, or for the trouble of the appellee in making the sales, although a compensation was claimed.

*Hoar* and *Newton* urged that the sale to Brooks, Houghton and the appellee, must have been known to all persons inter= ested in the estate, and approved of by them, and that two of the purchasers are appellants. *Trafford* v. *Boehm*, 3 Atk. 444.

*Bigelow*, *contrà*, contended that the appellee ought to be charged not merely with one third part, but with the whole of the profits of the resale of these lands ; because the same mis= chief may arise, where a sale is made by a trustee pursuant to an agreement with the purchasers that he shall share in the

Jenison
*v.*
Hapgood.

94

Jennison
v.
Hapgood.

profits of the speculation, as where he procures the whole to be purchased on his account alone. The *cestui que trust* is equally liable, in either case, to be defrauded of the difference between the amounts of the first and the second sale. A trustee is not permitted to act in such manner as will expose him to the temptation of committing fraud. 1 Madd. Ch. Pr. (1st ed.) 91, 92, 93; *Church* v. *Marine Ins. Co.* 1 Mason, 341. Had there been no combination with the executor, the other purchasers or different individuals might have given for the land, at the first sale, the price which was obtained at the second.

The appellants contended that the appellee had not accounted for all the assets which had come into his hands. It appeared that in 1815 he recovered a judgment on notes given by one Nightingale for real estate of the testator. In June 1816 part of the amount was received by the appellee on an execution, and the note of Nightingale was taken by the appellee for the balance, and the execution was discharged. This last note has not been collected. The appellee contended that nothing ought to be allowed to the estate on this account, because Nightingale has since lost the land, the title derived from the testator having proved defective. The auditor charged the appellee with the sum received on the execution.

It appeared to the auditor, that the testator died seised of two rights and one fifth of a right in the commons in Petersham. The fifth of a right was included in the mortgage to Mrs. Hale, under which the appellee claims the homestead. In 1820 a tax was assessed upon all the common rights, to pay which they were all sold by auction, and by an agreement between the proprietors then present, were bought in for their common benefit. In 1823 these shares were resold at a profit of $ 4·30 on each share. The appellee claimed and was allowed in the distribution of these profits, three shares. On what account he claimed these rights, did not distinctly appear, but there was no evidence of his having any right to them except as executor. The profits upon the shares of the proprietors who were not present, were divided equally among the proprieters who were present, and upon this account the appellee received $ 35·63.

Jennison
v.
Hapgood.

The appellee contended, that he ought not to be charged with any part of this sum, because it did not appear that he claimed or received the same as executor ; that he did not know that the testator had any rights beyond the fifth conveyed to the appellee by Mrs. Hale ; and that if he was charged with any part of this sum, he ought not to be charged with the $ 35·63, as this was the profits on the resale of the property, which never belonged to the testator, and for which the appellee ought not to account as executor.  But the auditor thought, that as the testator was legally entitled to two rights and a fifth, and as this was the only legal right under which the appellee could have acted, he ought, upon the principles before assumed by the auditor and sanctioned by the Court, to be considered as acting as trustee in the sale, and therefore to be chargeable with the $ 4·30 on each share, amounting to $ 12·90 ; and as the sale of the shares of those proprietors who were not present, was made for the benefit of those who were, that this part of the claim stood upon the same ground as the other, and the appellee ought also to be charged with the $ 35·63.

At the last meeting before the auditor, the appellants made an offer to the appellee, that compound interest should be cast on all the items in the account, on both sides, with annual rests. This proposition was not acceded to by the appellee, on account of the difficulty of his showing the exact time when the several payments were made or received by him.   Much of the property of the testator was sold upon a credit, and whenever this was done, the appellee demanded and received compound interest from the purchaser. The appellants contended, that interest ought to be compounded, because the appellee was in all cases in the habit of receiving it upon all claims due to the estate, (which appeared to have been the fact) ; — because he had converted the whole of the trust fund to his own use ;—and because he had unreasonably neglected to bring his administration account to a close.   The report of the commissioners of insolvency was made in September 1809, and the auditor could see no sufficient reason why the estate might not have been settled in January 1810.   Here the auditor thought a rest ought to be made, and that the appellee ought not to be charged with any interest previous to this time, except where

he had actually received it, which could easily be ascertained. From that time forward the auditor thought interest ought to be cast with annual rests in the account, upon the ground that the settlement of the estate had been unreasonably delayed. There was no evidence of the disposition made by the appellee of the funds in his hands, but as he claimed them all as his own, and seemed so to consider them, it was perhaps no more than reasonable to suppose that he converted them to his own use, so as to render him chargeable for the interest.

*Bigelow* contended· that the appellee ought to be charged with compound interest on money in his hands previously to January 1810 ; on the ground that he had used the money as his own and had made a profit of it. *Hall* v. *Hallet,* 1 Cox's Ch. R. 134 ; *Piety* v. *Stace,* 4 Ves. 620 ; *Brown* v. *Rickets,* 4 Johns. Ch. R. 303. If the executor cannot ascertain when the money came into his hands, it is his own fault. It was his duty to keep correct accounts. To show that under the circumstances of this case, compound interest ought to be charged, with annual rests, he cited *Schieffelin* v. *Stewart,* 1 Johns. Ch. R. 620 ; *Barrow* v. *Rhinelander,* ibid. 550 ; 2 Madd. Ch. Pr. (1st ed.) 114, 115 ; *Fay* v. *Howe,* 1 Pick. 527 ; *Brown* v. *Rickets,* 4 Johns. Ch. R. 303.

Among the charges for moneys paid for taxes, are included several sums paid upon lands which have never been sold or accounted for by the appellee, and the title to which, he says, has proved altogether defective. As these taxes were paid in good faith, and as it was extremely difficult to ascertain how far the titles to these lands were good, the auditor had allowed all these items. The appellants proposed to the appellee that he should quitclaim to them all the lands upon which taxes had been charged and which had not been accounted for, reserving the right of the wife of the appellee, and tendered to him a deed. The appellee declined executing this deed ; upon which the appellants contended, that the amount which had been charged by him for taxes upon these lands ought not to be allowed to him. And it seemed to the auditor, that the appellee should transfer to the appellants the possible advantages which might accrue from the testator's title, or supposed title

to these lands, and guard them against any incumbrances he had charged upon the lands, or that the amount paid for taxes upon them should be struck out of his account.

The appellee had made charges for taxes paid on lands in New Hampshire, where no letters of administration had been granted. These were objected to by the appellants, and were disallowed by the auditor.

*Hoar* and *Newton* said it might be conceded, that it was not strictly the duty of the appellee, as executor, to pay these taxes ; but they urged that it is the practice of executors and administrators to pay the taxes assessed on real estate, until the estate is settled. *Drinkwater* v. *Drinkwater*, 4 Mass. R. 354, 358 ; *Stearns* v. *Stearns*, 1 Pick. 157. Most of these taxes were paid before it could be ascertained whether the estate would be solvent or insolvent. Should an executor or administrator suffer land needed for the payment of debts, to be sold for taxes, and thus lost to the creditors, he would be guilty of waste.

The auditor reported that the sum of $ 356·40 was a reasonable compensation for the expense of administration in Massachusetts.

*Bigelow* contended that the compensation allowed was unreasonable in amount ; and further, that the appellee was not entitled to any compensation for his labor in administering the estate, because he had conducted himself unfaithfully and fraudulently in his administration, and with a single regard to his own personal advantage ; and had subjected the appellants to much trouble and expense in the prosecution of their equitable claims, by interposing vexatious and unfounded objections, and unnecessarily compelling them to go before a distant tribunal.

At October term 1827, the following opinion of the Court was delivered by

WILDE J. Several questions have been raised by the auditor's second report, the decision of which we will no longer delay, although, for reasons to be stated hereafter, we cannot at present proceed to pronounce a final decree.

The first and most important question relates to the domicil

of the testator. And this is to be decided on the facts and evidence reported by the auditor.

It appears that the testator's original domicil was in this Commonwealth. He was an inhabitant of Petersham in the county of Worcester, and owned a valuable farm there, on which he resided with his family for the greater portion of his life. He was a member of the first congress after the adoption of the constitution, and of the senate of this Commonwealth. In 1803, being then much embarrassed, he left the Commonwealth, and never afterwards returned. So that the question to be decided is, whether after he left the Commonwealth he acquired a new domicil in the State of Vermont or elsewhere.

To prove a change of domicil it must be made to appear, not only that the old domicil had been abandoned, but also that a new one has been acquired ; so that a domicil, being once fixed, will continue, notwithstanding the absence of the party, until there is a substitution of a new one. The intention to abandon an actual residence at another place, if not accompanied with the intention of remaining there permanently, or at least for an indefinite time, will not produce a change of domicil. *Somerville* v. *Somerville*, 5 Ves. 756.[1]

With a view to this general rule, which we consider as well established, we have examined the evidence, and are of opinion that it fails to prove, either that the testator intended to abandon his domicil at Petersham, or that he acquired a new one in any other place. There is certainly no direct evidence of the testator's intention to abandon his domicil in this State, and we think the contrary may be reasonably presumed. The principal ground of this presumption is the important fact, that he did not remove his family. The presumption is, that he did not intend to abandon them ; and this presumption is so strong, that it requires the most cogent proof to remove it.

[1] See 2 Kent's Comm. (3d ed.) 430, note (*d.*) ; *Harvard College* v. *Gore*, 5 Pick. 370; *Exeter* v. *Brighton*, 15 Maine R. (3 Shepley,) 58; *Wilton* v. *Falmouth*, 15 Maine R. (3 Shepley,) 479; *Green* v. *Windham*, 13 Maine R. (1 Shepley,) 225; *Richmond* v. *Vassalborough*, 5 Greenleaf, 396; *Casey's case*, 1 Ashmead, 126; *Lyman* v. *Fiske*, 17 Pick. 234; *Sears* v. *Boston*, 1 Metcalf, 250; *Wildes* v. *Parker*; 3 Sumner, 593; Story's Confl. Laws, (2d ed.) § 44 47; *Atherton* v. *Thornton*, 8 N. Hamp. R. 180, 181.

The evidence reported is far short of this, and is not inconsistent with the supposition that he intended to return. Probably he was induced to absent himself by a wish to avoid the effects of his pecuniary embarrassments, and to entitle himself to the privilege of suing in the courts of the United States.[1] If this was his object, and if he intended to return to his family, after having accomplished it, we cannot consider him as having renounced his domicil. It furthermore appears, that on several occasions, and as late as the year 1806, he styled himself of Petersham ; and he is so styled in his will. These are circumstances, which, if not conclusive, are nevertheless not easily to be reconciled with the belief that he intended to abandon his home and family.

But whatever might have been the testator's intentions, there is no satisfactory evidence to show that a new domicil was acquired. He had no establishment in Vermont. When he was there, he generally was a boarder with Gates ; but he led a wandering life, and there is nothing in the case to show that he intended to fix himself at any particular place. That the appellee never supposed his domicil was in Vermont, appears conclusively by the proceedings in the probate courts of both States. This we consider as a strong circumstance indicating the appellee's own opinion on the question, before any motive had intervened to bias his judgment. That he was well acquainted with the intentions and motives of the testator in relation to his residence in Vermont, cannot be doubted. He was nearly connected with him by marriage, and was for a long time his confidential agent and correspondent. With such ample means of information, it is impossible to believe that the appellee was ignorant of the testator's actual domicil.

Upon the whole, therefore, we feel no hesitation in deciding that the evidence reported is altogether insufficient to prove a change of domicil ; and consequently, that the testator's domicil, at the time of his decease, still remained in Petersham, notwithstanding his absence and his temporary residence in the State of Vermont.

*Jennison v. Hapgood.*

100

---

[1] See *Briggs* v. *French*, 2 Sumner, 255, 256.

The question of domicil being thus determined, we find little difficulty in settling the question of jurisdiction. It has been settled in this Court, that the *lex domicilii*, and not the *lex loci rei sitæ*, must govern in the distribution of the personal estate of a deceased person among his heirs or legatees, whether he dies testate or intestate. And this distribution is to be made under the authority of the court within whose jurisdiction the deceased had his domicil ; it not being competent for a court granting an auxiliary administration, to order a distribution of the estate among the heirs and legatees. *Dawes* v. *Boylston*, 9 Mass. R. 358. Whether in such case a distribution may not be made among creditors, when the estate is insolvent, we are not now called upon to decide. *Dawes* v. *Head et al.* 3 Pick. 128, [2d ed. 147, note 1 ; Revised Stat. *c.* 70, § 23.] In the present case, it is clear that the final settlement of the estate must be made within this jurisdiction. And it follows as a necessary consequence, that the appellee must be held to account here for the whole of the personal property and effects which have come to his hands, wherever found, or by whatever means collected. If then the appellee has a surplus in his hands arising out of the administration of the testator's goods and estate in Vermont, after paying the expenses of administration and discharging his own liabilities there, he is accountable for it here in the same manner as he would be if another had been appointed administrator and had paid over a balance. The proceeds of the sales of real estate are to be accounted for as personal property.[1] The appellee is estopped to deny the validity of these sales. We must therefore consider them as legally made for the purpose of enlarging the fund for the payment of debts and legacies. If more was sold than was necessary, this can be no reason for allowing the appellee to avoid the sales. Nor do we know whether, according to the laws of Vermont, the heirs, if they should object to these sales, would be permitted to avoid them. But if they could, certainly they are not compelled to pursue a

[1] See *Heydocks Appeal,* 7 N. Hamp. R. 496; *Davis* v. *Estey,* 8 Pick. (2d ed.) 476, note 1 ; *Porter* v. *Heydock,* 6 Vermont R. 374 ; 2 Kent's Comm (3d ed.) 433, 434, note ; Story's Confl. Laws, (2d ed.) 403 *et seq.*

course which would involve them in expense and litigation, and
operate most unjustly on the purchasers. The appellee cannot
complain, since he is held to account only for what he has ac-
tually received ; and from this he will be entitled to deduct his
expenses, and a reasonable compensation for his services, to-
gether with the amount of his legal liabilities, if not incurred
by his own misconduct or neglect. What will be the amount
of these expenses and liabilities, we cannot now determine.
Of his liabilities, if any exist, we have no means of judging ;
and if we had, a judgment here would not protect him in Ver-
mont. On the contrary, a judgment there, on this point, must
be conclusive on the court here. For although the appellee be
liable to account here for the whole trust fund, yet if in man-
aging it he has incurred liabilities within a foreign jurisdiction,
the judgment of the foreign court, if it has the power and
means to execute it, must be conclusive, or manifest injustice
might be done. The appellee is certainly amenable to the
courts in Vermont, and if he is compellable to account there,
he may account voluntarily, in order to avoid expense and to
terminate his liabilities. It has been however argued, that the
heirs, after calling upon him to account here for the effects in
Vermont, cannot compel him afterwards to account in Ver-
mont ; and this is doubtless true ; but still he may be liable to
the claims of the Vermont creditors, and if he should be held
thus liable by the courts there, we certainly cannot interfere.
We have no power to revise a judgment rendered by a court
of another State, or to prevent the execution of it. It would,
therefore, be manifestly unjust to compel the appellee to ac-
count for the funds from Vermont, while these outstanding
claims remain unsettled ; and since they cannot be settled here,
or ascertained, it seems necessary to await the decision of the
case pending in Vermont. We think likewise, that the ex-
penses of the foreign administration, as they may depend on
local law and usages, are regularly to be settled by the court
under whose authority they were incurred. The question,
whether the sales of the real estate were necessary, cannot be
raised ; because the heirs would not be allowed to say that
these sales were unnecessary, they at the same time claiming

the benefit of them by charging the administrator with the pro ceeds.[1]

Much has been said concerning the former proceedings in the probate court here ; and it has been contended that the appellee, having once elected to settle his whole account in this Court, must be bound by his election.   But we think it clear that these proceedings cannot bind him, since they have been vacated on the application of the heirs, and are no longer binding for any purpose.   To determine otherwise would be pushing the common law doctrine of estoppel to a most unreasonable extent.   The appellee, being compelled to account *de novo*, can by no just principle be precluded from pursuing a safe and legal course, although he incautiously omitted it when he rendered his former account.   It is not necessary now to decide as to the legal effect of a decree of the probate court of Vermont, and how far it will be conclusive ; for, whether conclusive or not, it must have an important bearing on the final settlement of the account here.

Having thus determined these general questions, we proceed to examine the account as stated by the auditor, omitting those items which relate to the administration in Vermont.

*The Homestead.*   The appellee claims interest on the sums advanced by him to redeem the mortgage, and we think the claim is well founded and must be allowed.   As to the expenses and trouble of raising the money, that is a subject to be taken into consideration in connexion with the other expenses of administration, and will be postponed for the reasons to be stated hereafter.

*Appellee's private account.*   The appellee's computation of interest up to the time of the commissioner's report, is clearly incorrect, for their proceedings are of no avail, the estate being solvent.   As to compound interest, there would be no pretence for claiming it, even had the testator promised to pay it. There is however no such promise ; he only engaged to allow reasonable interest ; which we think cannot exceed simple interest, which is allowed by the auditor.

*Dana and Petersham lands.*   We cannot determine with perfect certainty as to the correctness of this charge, but as

---

[1] See Story's Confl. Laws, (2d ed ) 433 *et seq.*

the principles upon which it is made have been already sanctioned by the Court, and nothing appears to show it to be erroneous, we presume that the auditor's judgment upon the evidence is right. At all events the error, if any, must be very inconsiderable. By the calculation made by one of the appellee's counsel, the charge should be reduced to $85·94. But in this estimate $100·09 is deducted for commissions, $39 for survey, and $65·90 for a supposed loss by receiving payment in lumber. These deductions are not supported by evidence, and most clearly are not allowable, if proved, to the extent claimed. Perhaps, also, if the rule, that a trustee shall not derive profit from the sale of the trust estate, were applied strictly, the appellee might be held liable to account for the whole profit of sale, instead of one third, for which he stands charged.

Considering then the rule adopted as favorable to the appellee, the commissions charged seem altogether extravagant. The taxes also are computed on the whole lands for six years, whereas some were resold immediately, and nearly all in three years. There is also $9 less credited in the sale of 1821, than the true amount, according to Mr. Bigelow's statement. Considering all these circumstances of uncertainty and doubt in the appellee's statement of his claim, we do not feel authorized, in justice, to make any deduction from the sum allowed by the auditor. The *onus*, as to the deductions to be made from the profits on the resales, is upon the appellee, and if he leaves it doubtful, the report of the auditor must stand.

*Further assets.* The money received from Nightingale is rightly charged. The appellee cannot exonerate himself from his liability by suggesting a defect of title, without proving that he is under a legal obligation to refund the purchase money. He, however, acknowledges that he does not know whether he gave a warranty or a quit-claim deed. Nor is it a defence that this money was received for land sold in Vermont, after having submitted to the examination of this claim before the auditor as appertaining to the account of administration in this State. If the appellee had intended to claim a trial before the tribunals in Vermont, he ought certainly to have claimed it before the decision was made by the auditor. But the report shows that

Jennison
*v.*
Hapgood.
he waived all objections to the jurisdiction of the Court, and asked only for leave to explain the facts by the introduction of new evidence. If any additional evidence shall be offered, it will be received, but it is now too late to appeal to a foreign court to take the chance of another trial.

*Commons in Petersham.* Considering the appellee as trustee for the heirs, we must hold him to account for whatever he has received in that capacity, whether rightfully or otherwise. He cannot free himself from this responsibility, except he show his liability to refund, or to pay over the money to some other person or persons having a right to demand it, and that payment had been demanded, or at least that it probably would be demanded. There is no such evidence reported by the auditor. The proprietors, whose shares have not been claimed, may have died without issue and without heirs in this country ; or if otherwise, there may be no probability that any claim for this trifling property will ever be made. In such case the trustee cannot be allowed to retain the fund. If the absent proprietors should appear and claim their shares, the heirs will be liable to pay. At present it is enough to know that the appellee acted as trustee ; and the evidence seems to us sufficient to establish this fact. The appellee not only has not attempted to prove that he had any claim to these commons in his own right, but he does not now pretend it.

*Interest.* The rule recommended by the auditor, as to the allowance of compound interest, or making annual rests, qualified as it was in *Robbins* v. *Hayward*, 1 Pick. 528, and in *Fay* v. *How*, 1 Pick. 527, is, we think, a just and equitable rule, and has been sanctioned by courts of equity in this and other countries. It is not to be applied, however, except when the trustee refuses or is unable to render an account of the use or profit actually made of the trust fund. To make a trustee liable at all events for compound interest, would doubtless, in many cases, be a hard rule ; for it is well known to every one at all acquainted with the difficulty of lending money safely, or investing it profitably, that it would be frequently impossible for the trustee to indemnify himself under the operation of such a rule. But he may at all times exonerate himself by accounting for the interest actually received, provided he acts faithfully

and with ordinary care ; or he may apply to a court of equity for direction as to the appropriation of the trust fund.

In the present case the appellee renders no account of the use made of the money in his hands.  He claims it as his own, and denies his indebtedness to the estate.  It appears also, that he has been in the habit of demanding and receiving compound interest ; and that at the time when the principal sales were made, money was in quick demand, and might have been lent on the most favorable terms.  When these facts are considered, and when we consider also the unsatisfactory manner in which the appellee has attempted to repel the imputation of fraud or gross negligence, we cannot think that the rule adopted can be considered as a hard one.

We concur also with the auditor as to the time when the computation of interest is to commence, but we cannot agree to the inference contended for by the appellants' counsel, that no charge is to be allowed in favor of the appellee after that time.  For although the estate might have been settled as early as January 1810, yet as it was not in fact then settled, and the appellants are claiming the benefit of sales made since that time, and of other transactions relating to the trust fund, it would be manifestly unjust not to allow all necessary charges and expenses incurred in the management of the property. For although some of these sales might have been unnecessary, yet if the heirs elect to confirm them, and hold the appellee to account for the proceeds, the expenses must be deducted. Interest will be computed on the funds from Vermont, as well as those in this State.  The question of interest is exclusively cognizable by the Court here, in which the final settlement of the whole estate is to be made, and by whose authority alone distribution can be made among the heirs and legatees to whom the interest is due.

*Charges for taxes paid on lands not sold.*  The auditor reports that these taxes were paid in good faith, and the only reason suggested for the disallowance of the appellee's charge therefor, is, that he refused to execute a deed of release, which we understand he has since executed, and filed in the probate office ;  so that this objection is removed, and the charge is accordingly allowed.

*Charges for taxes paid on lands in New Hampshire.* However equitable these charges may seem to be, they cannot be allowed. The payment of the taxes was voluntary and without authority, and, like the payment of a debt by a stranger, cannot be the foundation of a legal claim.

*Expenses of administration.* We postpone this subject for further examination, not having sufficient means of information, as to the particular services rendered and expenses incurred, to form a satisfactory opinion as to the allowance which ought to be made. There are also some other small items not noticed, which may perhaps require hereafter a more minute and close examination than we have hitherto been able to make ; all which however we think may be settled without the trouble and expense of another hearing before the auditor.

In October 1830, the decree of the Supreme Court of Vermont * came before this Court, and was considered in connexion with the auditor's reports before mentioned.

The auditor states, that in May 1814, the appellee made a representation in the probate court in this county, by which there appeared to be a balance due to him of $ 2551·23, beyond the assets in his hands, and that upon the register's certificate of this fact, leave was obtained from the court of probate in Vermont, to sell enough of the testator's lands in that State to satisfy this balance. And soon afterward a sale was made of nearly all the real estate there belonging to the testator, for the nominal sum of $ 6114·86. This sale was entirely unnecessary, and could not have been made, if the true state of the accounts of the appellee had then been known ; but by a mistake in the settlement of his account in 1813, a large sum was erroneously carried to the credit of the appellee. The lands were nearly all bought by persons employed by the appellee to bid for him, and he contended that the purchase was made by him for the benefit and on account of those interested in the estate, and that he now holds the same as trustee for them, and that all the expenses incurred and services performed by him in relation to these lands, ought to be credited to him and made

---

* See *Hapgood* v. *Jennison*, 2 Vermont R. 294.

a charge upon the trust fund. The appellants contended, that the appellee had no right to purchase the lands on their account, and though they might, if they chose, elect to consider it thus, they were not bound to do so. And in a paper filed in the case, they elected to consider the sale valid, and to charge the appellee with the above sum of $6114·86. The appellee contended that he ought not to he charged with the amount for which these lands were sold, if he is to be charged with them at all ; that the titles to many of the parcels were defective, and that the real value of them is much less than the sums for which they were sold, and that the greater part of them yet remained on hand. The appellants, on the contrary, contended that he ought to be charged a much larger sum than the one above stated, because they said that in an exchange of some of the parcels for land of Joseph Hendrick, he made a profit beyond the amount for which the lands of the testator, given in exchange, were credited to the estate. Six lots of land comprised in the sale of 1814, and which were sold for about $130, were, together with property belonging to the appellee estimated by the auditor at $870, conveyed to Hendrick in 1821, in exchange for a farm in Dana, in this State, and in 1825 the appellee sold the farm for $2950.

In relation to the gains made by the appellee in the resales of lands bought by him in 1814, the Supreme Court of Vermont say they entertain no doubt of the right of the heirs to make their election, whether the executor shall be considered as a purchaser and pay them the amount of his sales, or as their trustee, and account for the avails as they are at the time when the election is made ; that the matter of greatest importance is, to ascertain how the subject ought to be considered in point of fact, — whether the sales and purchases and resales of each lot shall be considered as independent transactions, and the executor liable to have the election of the heirs apply to each lot, in a separate view, as the appellants contend, or whether the whole must be considered as an entire trust, and the accounting of the executor be for the entire trust property, as the whole is when the account is taken, as contended by the appellee ; that after the decease of the testator, all his wild lands in Lunenburg were appraised at what was considered to

be their average value ; that the executor employed his agents to bid, not with a view to become owner of particular lots, the value of which he had previously ascertained, but to be sure to make a profitable sale for the heirs, at the risk of becoming owner of many lots, and without any view to their comparative value ; that for the purposes now under consideration, the whole must be considered as an entire purchase by the execu- tor, and the accounting must be of the whole in a consolidated view ; and that the executor must not be compelled to pay to the heirs his gains in the lots sold, without being made good, if any of the lots that remain unsold are of less value than the sum they cost him.

In the Supreme Court of Vermont, the appellee was charged with a balance of $ 7844·43, with interest at six per cent from the 1st of June, 1815, to July 1829, the time of the decree, amounting to $ 6675·56 ; for which that court gave the follow- ing reasons. "Various facts reported have induced the court to cast the interest as above. The great improbability that the avails of the sales of June 1st, 1814, were received to any considerable amount, under a year, and perhaps not in money then ;· and the further probability, that some will never be paid, have induced the court to commence the cast of interest one year after that sale."

"The consideration that many of the lands remain unsold by the executor to this time, reported as wild lands from which no profit has accrued ; the frequent taxes he has been obliged to pay since his purchase ; the remaining uncertainty of some, at least, of the titles ; the improbability of any future sale for cash, for many years ; and many other circumstances connect- ed with the ownership and care of lands situated like these, have induced the court to allow six per cent interest only. Had it been a moneyed estate instead of wild lands, and the money had gone into speculations, we should not have hesitated to cast compound interest, so far as to make annual rests during the whole period."

In regard to the compensation of the appellee, the auditor reported, that the expenses of administration in Massachusetts had been separated from those in Vermont,.and with respect to

the former he was of opinion that the sum of $ 356·40 was a reasonable compensation.

*J. H. Ashmun* and *Bigelow*, for the appellants.  In regard to the legal liabilities of the executor in Vermont, and the compensation for his services as administrator there, we admit the decree of the court of that State to be conclusive ; but so far as this Court is competent to settle any point, they will not hold themselves bound by the decision in that State.

On the question of interest, the court in Vermont has clearly exceeded its jurisdiction.  The appellee having sold the lands there and brought the proceeds into this State, the question of interest is to be determined here ; and so this Court decided in 1827, (*ante*, page 104,) when it was held that the appellee was chargeable with compound interest.  So soon as the money was received in Vermont by the appellee, it was in his hands as executor here.  It was not wanted there, and he gave credit for it in his account settled here in 1815.  The appellee is to be charged with interest on the ground of neglect, delay and fraud.  If the appellants had been aware of the fraud on the part of the appellee, they would have gone to Vermont in 1815, and the money would have then been brought here. They are entitled to as much benefit from the money as if that had been done, since they have been delayed solely by the fault of the executor.

The appellants could rightfully elect to consider the appellee as a trustee in the exchange of lands with Hendrick.  The Vermont lots were sold separately, and it is not for the executor to say there was but one sale.  The land taken of Hendrick, and which was sold at a large profit, became likewise trust property, and being within this State, the profits on it were made here, and the court of Vermont had no jurisdiction as to this part of the case.  *Lane* v. *Dighton*, Ambl. 409, 413 ; *Lench* v. *Lench*, 10 Ves. 517 ; *Boyd* v. *M'Lean*, 1 Johns. Ch. R. 582 ; *Murray* v. *Lylburn*, 2 Johns. Ch. R. 441 ; *Randall* v. *Errington*, 10 Ves. 423 ; *Davoue* v. *Fanning*, 2 Johns. Ch. R. 252 ; *Lewin* v. *Guest*, 1 Russell, 325 , *Adye* v. *Feuilleteau*, 1 Cox's Ch. R. 24.

The appellee is not entitled to any compensation for his administration in this State.  The jury have found that he con-

ducted himself fraudulently, and the heirs have been great losers by his maleadministration.

*Hoar* and *Newton*, for the appellee, said in regard to interest, that the Court would consider the administrator in Vermont as a stranger to the executor here, and that the jurisdiction of this Court over the proceeds of the sales in Vermont, did not commence until there had been a final settlement of the administration in Vermont. *Austin* v. *Gage*, 9 Mass. R. 395.

*Oct. 11th.* WILDE J. delivered the opinion of the Court. After the many causes of delay which have intervened to suspend a final decree in this case, it must be highly satisfactory to the parties, as it is to the Court, to find that all subjects of controversy having been examined by the competent tribunals, and the proceedings of the probate court in the State of Vermont being now brought to a close, no further cause of delay remains to prevent the ultimate decision of this long litigated case.

The question discussed at a former term, and now again argued, as to the limits of the jurisdiction of the court of probate in Vermont, might require a more full and careful consideration than we have bestowed upon it, if we had any reason to be dissatisfied with the decision of that court. But having considered the objections made by the appellants' counsel to that decision, and the reasons given by the court in support of it, we are entirely satisfied that the case, so far as it has been adjudicated upon in Vermont, has been decided upon correct principles, and that there is nothing in the proceedings there which requires revision and correction, except perhaps some small mistakes in detail, which are alleged to exist, and which it is agreed may be amended, the mistakes appearing, as it is said, on the face of the account stated.

One objection, and the one principally relied on by the counsel for the appellants, relates to the charge of interest against the administrator. The rule adopted by this Court, making annual rests in the administrator's account, was not adopted in form by the court of probate in Vermont. The justice of the rule, however, is admitted by the court there, and substantially it was adopted ; for it is stated in the decree, that the charge was reduced to simple interest, in consideration of sundry equitable allowances, to which they thought the ap-

pellee was entitled, arising out of the unproductive state of the assets in his hands, and other circumstances affecting the question. A considerable portion of the lands sold, and for which the appellee has been held to account, remained in his hands for a long time without yielding any profit, or increasing in value ; and some are still unsold by him, and are wholly un productive. These and other considerations induced the court to charge the appellee with simple interest only, and we think the heirs have no cause to complain.

The appellants also object to the proceedings and judgment of the court in Vermont, because the appellee was not charged with the profits made by the exchange and sale of some of the lands, of which he became a purchaser. These lands were exchanged by him for lands in this Commonwealth, which have been sold and a considerable profit has been realized. The appellants claimed, and still claim, to charge the appellee with this profit. This claim was disallowed in Vermont, and, as it appears to us, for sufficient and satisfactory reasons. The heirs were permitted to affirm or disaffirm the original sales at their election ; but they were not permitted to treat these sales as distinct and separate sales, affirming part and disaffirming the residue. A case can hardly be imagined in which such a right of selection would be allowed. It cannot be necessary in order to protect the rights of the heirs ; these are sufficiently secured by the right of election which was allowed ; and it would be most unreasonable and unjust to subject the appellee to a loss, when he acted fairly and for the manifest benefit of the heirs, — and it cannot be denied that the appellee's ser- vices in regard to the management and disposition of these lands, were highly meritorious. The heirs therefore can have no right to the profits claimed, unless they elect to consider all the lands purchased in by the appellee as held in trust for them. He cannot in justice be compelled to hold part in trust, and part as purchaser on his own account, to his manifest loss, without any fault on his part. And besides, the appellants have elected to consider the appellee as a purchaser, and the court in Vermont proceeded on the election thus made. It would be unreasonable to allow the heirs to make a new election and

to open the accounts to a new examination on another and different basis.

In regard to the allowance made by the auditor as a compensation for the appellee's services and expenses, we have had doubts whether it ought not to be somewhat enlarged ; but considering that some of these services and expenses have become necessary in consequence of the appellee's own neglect and mistakes, we think that the sum allowed by the auditor may be considered as a fair compensation. The appellants contend that no compensation ought to be allowed, because the appellee has been found guilty of unfaithful administration. This consideration, however, ought not to be blended with the claim for compensation, so far as the services of the appellee have been beneficial to the heirs.

On these principles, and those heretofore laid down, the account may be stated, without any further reference to an auditor ; and the case will be continued *nisi* for the purpose of entering a final decree as soon as may be.

